UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| CINDY PRIZIO,<br>　　*Plaintiff,*<br>　　　*v.*<br>LINCOLN NATIONAL LIFE INS. CO. and<br>METROPOLITAN LIFE INSURANCE CO.,<br>　　*Defendants.* | Civil No. 3:11cv736 (JBA)<br><br>March 31, 2014 |

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

In this diversity case, Defendants filed their Motion for Summary Judgment on August 5, 2013 [Doc. # 72] (with accompanying Memorandum of Law, Local Rule 56(a)1 Statement and supporting documents, including the 1994 Individual Disability Income Policy No. 15-6134451 and related correspondence, medical records and correspondence, claims review and appeal file, tax returns, reports by Defendants' retained reviewing psychiatrist and certified public accountant, affidavits and Plaintiff's deposition). Plaintiff's two motions for extension of time [Doc. ## 75, 78] were granted and Plaintiff's opposition was to be filed by September 30, 2013. No opposition was filed, and no additional extension of time within which to respond has been sought by Plaintiff.[1]

After full review of the motion and supporting record, Defendants' Motion for Summary Judgment is granted. The record shows that Plaintiff has not met her burden of showing by medical documentation submitted by Plaintiff's medical treatment providers that she was unable to substantially perform the essential functions of her employment from May 25, 2006 to May 2009. Plaintiff claims depression-related total disability

---

[1] D. Conn. L. Civ. R. 7(a) provides that "[f]ailure to submit a memorandum in opposition to a motion may be deemed sufficient cause to grant the motion."

starting May 25, 2006, associated with her husband's death. She first communicated her diagnosis to Defendants by telephone on July 1, 2009, and filed her claim for long-term disability benefits on July 20, 2009, outside the policy claim deadline.[2] The record shows lack of clarity with respect to the frequency, duration and severity of Plaintiff's symptoms of depression and anxiety during the claimed three-year period, compared with her prior depressive condition during which she was able to work, as well as the gaps and shortcomings in the records of the medical professionals who treated Plaintiff which were provided to MetLife. Defendants' claim of prejudice was identified by MetLife

---

[2] Citing the Second Circuit's ruling in *Arrowood Indem. Co. v. King*, 605 F.3d 62, 77 (2d Cir. 2010), Defendant asserts that Plaintiff bears the burden of establishing that her failure to provide timely notice of her insurance claim did not prejudice her insurer. (Defs.' Mem. Supp. [Doc. # 72-2] at 29.) In *Arrowood*, however, the Second Circuit cited *Aetna Cas. & Sur. Co. v. Murphy,* 206 Conn. 409, 412 (1988) for this proposition and certified a related question to the Connecticut Supreme Court. In answering this certified question, the Connecticut Supreme Court "overrule[d] *Aetna Casualty & Surety Co. v. Murphy,* 206 Conn. 409 (1988), to the extent that it allocated the burden to the insured to disprove prejudice, and [held] that the insurer bears the burden of proving, by a preponderance of evidence, that it has been prejudiced by the insured's failure to comply with a notice provision." *Arrowood*, 304 Conn. 179, 201 (2012). Counsel are reminded of their duty of candor requiring a lawyer "to disclose to the tribunal legal authority in the controlling jurisdiction known to the lawyer to be directly adverse to the position of the client and not disclosed by opposing counsel." Conn. Rules of Prof. Conduct, Rule 3.3(a)(2). Citing to authority in a legal memorandum that has been overturned before the submission of the memorandum may violate this duty. *See Cimino v. Yale Univ.*, 638 F. Supp. 952, 959 n.7 (D. Conn. 1986) ("[Counsel who] failed to inform the court that that case was specifically overruled . . . is admonished that diligent research, which includes Shepardizing cases, is a professional responsibility, and that officers of the court are obliged to bring to its attention all important cases bearing on the matter at hand, including those which cut against their position." (internal citation omitted)); *see also Kuhnle Bros., Inc. v. Cnty. of Geauga*, 103 F.3d 516, 520 (6th Cir. 1997) (imposing sanctions where counsel relied on on a case that was overruled more than one year before counsel's filing of its opening brief in "a violation of counsel's duty of candor to this court").

personnel involved in processing Plaintiff's claims to include being unable to interview co-workers and clients from the pre-May 2006 period, when Plaintiff also suffered from depression, or to obtain adequate contemporaneous medical information for this three-year period. While Plaintiff's primary physician, who treated Plaintiff for more than three decades, noted her chronic state of depression and dysfunction, Plaintiff's reason given for her untimely claim was not that she had been too incapacitated, but that she did not want to "open herself up and fight" with the insurance company as she anticipated would be necessary. She also did not know if she had coverage for mental conditions because she did not have a copy of her policy and MetLife initially would not tell her if mental disability was covered under her policy and said it would charge her $20 for a replacement copy, which she eventually purchased. Based on Defendants' unrebutted evidence it has proven by a preponderance of the evidence that it was prejudiced by Plaintiff's late notice. *See Arrowood*, 304 Conn. at 201.

Plaintiff's self-described symptoms in her statements to Senior Field Representative Randy Guillen about her degree of disability contrast with the Affidavit of Peter Slavin (Defendant Metropolitan Life's Senior Financial Service Executive), from whom Plaintiff sought assistance in obtaining health insurance starting in August, 2006, after her husband's death. Slavin described normal contacts through February 2009 and no mention by Plaintiff of being disabled or unable to work, including contact with two potential clients between November 2008 and January 2009 with whom Slavin put her in touch.

Inasmuch as Defendants' reasons for denial—untimely claims and insufficient medical records until May 2009 are supported by the evidence, Plaintiff's breach of

contract claim fails, as does the associated claim of breach of good faith and fair dealing. Her Connecticut Unfair Insurance Practices Act ("CUIPA") claim is not a cognizable stand-alone claim, *see Lander v. Hartford Life & Annuity Ins. Co.*, 251 F.3d 101, 118 (2d Cir. 2001) ("[CUIPA] does not provide a private cause of action."), and there is an inadequate record to support a Connecticut Unfair Trade Practices claim arising from the claimed CUIPA violation including the extended claim processing time by MetLife resulting from the three-year medical and work history at issue.

It is unnecessary for the Court to address whether the terms of the original policy, in "lapse pending" status in January were revived by Plaintiff's voluntary change in coverage to decrease the monthly benefits and benefit period.

**Conclusion**

Defendants' Motion for Summary Judgment [Doc. # 72] is GRANTED. Judgment shall enter in favor of Defendants and the Clerk is directed to close this case.

IT IS SO ORDERED.

\_\_\_\_\_/s/_____
Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 31th day of March, 2014.